O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE BIRDEN, | Case No. CV 03-363 AN |
| Plaintiff, | AMENDED MEMORANDUM AND ORDER RE MOTION FOR ATTORNEYS FEES PURSUANT TO 42 U.S.C. §406(b) |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

This Amended Memorandum and Order replaces the original Memorandum and Order filed on June 28, 2007, that was inadvertently filed with some notes that were not intended to be included. This Amended Memorandum and Order is identical to the original Memorandum and Order except the notes have been deleted.

## I. BACKGROUND

Plaintiff's counsel, Marc V. Kalagian, a partner of the Law Offices of Rohlfing & Kalagian, has filed a motion for attorneys fees (docket item #18) ("Motion"). His Motion is made pursuant to 42 U.S.C. § 406(b) and he seeks an order awarding him §406(b) fees in the gross amount of $17,368.25, less $3,000.00 of EAJA fees previously paid, for net § 406(b) fees of $14,368.25. Counsel represents 19.75 attorney hours and 3.5 paralegal hours were expended to obtain a remand that ultimately resulted in a recovery of $71,445.00 of Title II benefits for his client in this case. The Commissioner has filed a

response that provides an analysis of the fee request without taking a position (docket item #22). Counsel has filed a reply (docket item # 23). Also, in response to the Court's order dated May 14, 2007 (docket item #25) ("5/14/07 Order"), Counsel has filed a supplemental declaration dated May 17, 2007 (docket item #26).

## II. Discussion

**A.    Standard of Review**

Under § 406(b), the Court may award a "reasonable" amount of attorneys fees to a successful claimant's counsel, but the fee cannot exceed 25 percent of the total of the past-due benefits awarded to the claimant.

In *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002), the Supreme Court resolved a division among the Circuits on the method of calculating § 406(b) fees. The *Gisbrecht* majority found § 406(b) is designed to control, not displace, contingency fee agreements in social security cases. 535 U.S. at 793, 807. In doing so, the Court expressly rejected the "lodestar method" used by several circuits (including the Ninth Circuit), primarily because it was "designed to govern the imposition of fees on the losing party" in fee-shifting cases; in contrast, claimant's attorneys in social security cases are "paid directly with funds withheld from their clients' benefits awards[.]" *Id.* at 804 n. 13, 807.

However, the *Gisbrecht* majority did not find contingency fee agreements were reasonable *per se* even if the fees were capped at or below § 406(b)'s statutory ceiling of 25 percent of the back benefits awarded. Instead, the Court held § 406(b) instructs lower federal courts to make a reasonableness check that principally credits the contingency fee agreement (if the contract does not exceed the 25 percent statutory cap), and then requires the claimant's attorney to show "the fee sought is reasonable for the services rendered." 535 U.S. at 807. *Gisbrecht* held "the character of the representation and the results the representative achieved" may justify a reduction. *Id.* at 808. Examples warranting a fee

reduction include: (1) counsel's "substandard" representation[1］; (2) counsel's delay (which may justify a reduction to prevent counsel from profiting from the accumulation of benefits while the case is pending due to any foot-dragging) and (3) "*if the benefits are large in comparison to the amount of time counsel spent on the case* [thereby resulting in a windfall], *a downward adjustment is similarly in order.*" ("windfall factor"). *Id*. at 808 (citations omitted and emphasis added).

reduction include: (1) counsel's "substandard" representation[1]; (2) counsel's delay (which may justify a reduction to prevent counsel from profiting from the accumulation of benefits while the case is pending due to any foot-dragging) and (3) "*if the benefits are large in comparison to the amount of time counsel spent on the case* [thereby resulting in a windfall], *a downward adjustment is similarly in order.*" ("windfall factor"). *Id*. at 808 (citations omitted and emphasis added).

As of the date of this Order, the Ninth Circuit has not issued a published opinion discussing *Gisbrecht* in the context of a §406(b) fee request in a social security case. However, on April 24, 2007, a three judge panel of the Ninth Circuit did so in an unpublished plurality opinion. *Black v. Astrue*, unpub. op. at *1 (9th Cir. (Cal), filed Apr. 24, 2007), 2007 WL 1202886.[2] The *Black* majority held that a district court abused its discretion in reducing a §406(b) fee request by "focus[ing] on a lodestar-type of calculation rather than crediting the contingency fee agreement and then performing a reasonableness check." *Id.* On remand, the Court instructed the district court to "consider most of the reasonableness factors noted in *Gisbrecht*, including the attorney's risk of loss, the nature and character of the representation, future benefits accruing to the petitioner from counsel's work, delays caused by counsel and other uncertainties[, and] the claimant's failure to object to the fee award or counsel's own reduction of the fees from the amount due under the contingency fee agreement." *Id*.

In light of the foregoing, the Motion shall be evaluated in light of the factors discussed in *Gisbrecht* and *Black*.

**B.     Analysis**

    **1.     The Contingency Fee Agreement**

The Motion is supported by a copy of the mutually executed contingency fee

---

[1] The *Gisbrecht* majority apparently recognized some claimant's counsel manage to achieve a successful result for the clients in spite of themselves.

[2] Pursuant to FRAP 32.1, *Black* is cited for its persuasive guidance.

Page 3

agreement between the plaintiff and Counsel's partner. [Motion, 8/25/06 Declaration of Marc V. Kalagian ("Kalagian Decl."), ¶2. Ex. 1.] The contingency agreement establishes the plaintiff agreed to pay attorney fees corresponding to 25 percent of the back benefits awarded for work before the Court -- the statutory maximum. Although the record does not indicate the contingent fee agreement was the product of fraud, coercion, or overreaching, the Court observes in the ALJ's post-remand decision awarding benefits, the ALJ ordered that "[p]ayments to the claimant must be made through a representative payee" because the ALJ found "the claimant was incapable of managing his own funds." [Motion, Ex. 2 (6/16/06 Decision at 4).] Nonetheless, the proof of service attached to the Motion establishes that Counsel served a copy of the Motion on his client, and the Court's records do not show the plaintiff has filed any objections to the Motion despite having an opportunity to do so.

Following a post-remand hearing, the plaintiff's application for Title II benefits was granted and he received an award of $71,455.00 in back benefits. Pursuant to the terms of the contingency fee agreement, the plaintiff agreed to pay Counsel fees in the amount of $17,863.75 ($71,455.00 x .25 = $17,863.75). The Commissioner withheld $17,368.25 of the back benefits to cover Counsel's attorneys fees, which is $495.50 below the statutory 25 percent boundary and Counsel's pending request for §406(b) fees.

### 2. Nature and Character of Representation

The Court's own records establish that Counsel has represented approximately 600 social security claimants in the Central District of California, including several cases that were assigned to this Court. The level of Counsel's experience and skills in representing his clients before the Court has been consistently high relative to the average social security practitioner.

Counsel's background enabled him to recognize the ALJ's underlying decision raised one simple issue that warranted a sentence four remand. His skill in presenting the sole issue in a concise manner made it clear to the Court that a sentence four remand was proper. Counsel only expended 19.75 hours of his time, and 3.5 hours of his paralegal's

time, to achieve a successful result. Counsel also emphasizes the amount of time he took was well below the "...33.75 hours of attorney time that is typical and reasonable for a Social Security case." [Motion at 11:14-20.[3/]] The Court finds the time spent and result achieved is a reflection of the high quality of representation that Counsel provided his client in this case. Accordingly, the Court does not find any reduction is warranted for the substantive character of Counsel's representation.

### 3. Contingency Risk Factor

Having represented approximately 600 claimants in social security cases filed with this Court, Counsel has a relatively large amount of available data that would enable him to show his level of risk in taking this case on a contingency basis. The relevant data includes: (1) his personal rate of success; (2) the rate of success of other attorneys in his firm; (3) the average time he spends per case in both successful and unsuccessful cases; and (4) the percentage of pre-filing cases he accepts and rejects following a pre-filing merit assessment that is presumably made in compliance with Fed.R.Civ.P. 11(b).[4/] However, Counsel has not proffered such data.

The Court finds Counsel has not shown that he incurred a significant risk in taking this case on a contingency basis. This case did not involve any novel or complex issues

---

[3/] Mr. Kalagian's assertion is based upon a survey made in *Patterson v. Apfel*, 99 F.Supp.2d 1212, 1214 (C.D. Cal. 2000). However, in *Patterson*, the court actually found "a survey of several dozen cases in which attorney's fees were awarded in social security cases suggests that the 33.75 hours spent by plaintiff's counsel falls within the approved range." *Patterson*, 99 F. Supp. 2d at 1214. The survey of cases included "...*Terry v. Bowen*, 711 F.Supp. 526, 527 (D.Ariz.1989) (granting fees under 42 U.S.C. § 406(b) for 37.75 hours of attorney time, noting that "[t]his is not an inordinate amount of time, and in fact, falls right in line with one court's determination of an average.... 'An interesting in-house survey performed by Chief Judge Carl Rubin of the Southern District of Ohio and encompassing seven years of data and found that the average number of hours asserted in the fee petition was 37.3.'") (quoting *Rodriquez v. Bowen,* 865 F.2d 739, 747 (6th Cir.1989))." *Id*. at note 2.

[4/] Evidence of a rigorous risk avoidance practice of rejecting difficult cases at the outset would increase an attorney's rate of success and may be indicative of a lower risk of loss that justifies a reduction. Conversely, a low success rate and corresponding data showing the attorney agrees to represent virtually every prospective client that enters his office without much regard to the merits may be indicative of a higher risk of loss.

of fact and law. The ALJ's error was so manifest that Counsel only needed to brief one simple issue. The plaintiff's entitlement to benefits and the likelihood of success were so obvious that, on remand, the ALJ awarded benefits based upon the record without considering any further testimony from the plaintiff. Indeed, the ALJ's decision shows the plaintiff did not even appear at his post-remand administrative hearing. [Motion, Kalagian Decl., ¶3, Ex. 2 thereto (6/16/06 Decision at 1).] Counsel asserts that his law firms[5] represent 30% to 40% of the plaintiffs in social security cases filed in this judicial district. [Motion at 18:19-19:1.] This case was commenced on January 13, 2003. During this fiscal year, 1,382 social security cases were filed in this judicial district. 2003 Annual Report of the Director, Judicial Business of the United States Courts, Supplemental Tables, Table S-9 at 40. According to Counsel's statistics, this would mean Counsel's law firms represented social security claimants in roughly 414 to 553 of the 1,382 social security cases filed in this judicial district for the fiscal year ending on September 30, 2003. Counsel asserts that approximately 95% of his law firms' practice is social security disability. [5/17/07 Supplemental Declaration of Marc V. Kalagian (docket item #26) ("Supplemental Declaration"), ¶3.] Generally speaking, attorneys who elect to represent all or most of their clients on a contingent-fee basis (rather than an hourly rate) typically maintain large volume practices in order to minimize and spread out the economic risks of running such a law practice. Counsel has been representing social security claimants since 1990, and he is obviously well aware of the risks in maintaining such a practice. Further, by electing to maintain a high volume, contingency practice representing social security claimants, Counsel has factored the risk of non-payment as part of the normal risk in operating his particular practice.

There was no risk of non-payment if Counsel succeeded because, as recognized in *Gisbrecht*, the maximum amount of statutory §406(b) fees are withheld from a portion of

---

[5] The Law Offices of Lawrence D. Rohlfing, and Rohlfing and Kalagian, LLP. [Motion at 18:25-26 n.7; 8/25/06 Declaration of Marc V. Kaligian, ¶11.]

the benefits awarded to the claimant. *Gisbrecht*, *id*. at 804 n.13.

Counsel has not shown that he or his firm incurred any risk of loss by advancing costs to the plaintiff. Cases brought pursuant to 42 U.S.C. §405(g) are based upon the administrative transcript and pleadings, and they rarely, if ever, involve and require counsel to advance costs for discovery or expert witnesses. The most significant cost that an attorney advances to a client in this type of case generally consists of the $350.00 fee for filing the complaint required by 28 U.S.C. §1914(a). However, the Court granted the plaintiff's application to waive the filing fee because he qualified for *in forma pauperis* ("IFP") status. [1/23/03 Order granting IFP status (docket item #2).[6]]

In this regard, the Court also rejects what appears to be counsel's suggestion that he undertakes the same or similar risks as plaintiffs' counsel in class action securities cases. [*See* Motion at 15:3-21.] In class action securities cases, plaintiffs' attorneys typically advance hundreds of thousands of dollars or more to cover litigation expenses in a single case, a substantial portion of which is incurred for two phases of discovery (class certification and merit). In contrast, traditional discovery is rarely required in social security cases because the proceedings before the district court are generally limited to a review of an administrative record, the preparation and copying costs of which are borne by the Commissioner. Class action securities cases also involve complex procedural and substantive issues that require a significant amount of attorney time to research and brief. Indeed, the attorney time required to produce motions for class certification, discovery, approval of settlements, and case-dispositive matters in class action securities cases generally eclipse the "33.75 hours of attorney time" that Counsel maintains "is typical and reasonable for a Social Security case." [Motion at 11:14-20.] Plaintiff's attorneys in class action securities cases are also called upon to advance substantial funds to cover the costs of hiring expert witnesses; here, counsel has failed to show that he incurred and

---

[6] The Court also notes that Mr. Kalagian and his firm rarely incur any risk of loss relating to filing fees because the vast majority of their clients apply for, and are granted, leave to proceed IFP.

Page 7

advanced any such costs in this case or in his other cases.

The Court finds a reduction is warranted by this factor.

### 4. Delay

The complaint was filed on January 14, 2003. In accordance with the Court's Case Management Order dated January 30, 2003, the parties filed the joint stipulation on October 23, 2003, at which time the matter was fully briefed. Judgment was entered on November 22, 2004. Therefore, the Court finds this is not a situation where the amount of back benefits accumulated due to any excessive delay attributable to counsel.

No reduction is warranted for this factor.

### 5. Windfall Factor

As discussed above, *Gisbrecht* instructs a "downward adjustment is in order "if the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* at 808. Counsel obtained $71,445.00 of back benefits for his client and only spent 19.75 hours of attorney time and 3.5 hours of paralegal time to achieve this result.[7] [Motion, Kalagian Decl., ¶4, Ex. 3; ¶5, Ex. 4.]

The Court finds the benefits are comparatively large to the time spent. In an attempt to meet his *Gisbrecht* burden of showing "the fee sought is reasonable for the services rendered," Counsel argues his request for $17,368.25 in § 406(b) fees is reasonable because the "effective hourly rates" are $830.80 for his attorney time and $274.29 for his paralegal's time. [Motion at 7:11-12; 11:10-11.] He further asserts these effective hourly rates are reasonable because they are comparable to the average normal hourly billing rates for attorneys in a small California law firm (12 or less attorneys) that are set forth in *The 2000 Small Law Firm Economic Survey* authored by Altman Weil, Inc. ("2000 Survey"), and which he claims to use as a measure of his suggested non-existent hourly rate. [Motion

---

[7] The time was incurred during the period from December 2, 2002, through January 11, 2005. The services rendered in December 2002 were limited to .3 hours of attorney time and .4 hours of paralegal time for services rendered on December 2, 2002. The bulk of the attorney time was expended in the months of July, 2003, and October, 2003, and most of the paralegal time was expended in the months of January and February, 2003.

Page 8

at 7:1-11:12; 12:25-13:16; Kalagian Decl.,¶6, Ex. 5; ¶7, Ex. 6 .] Despite *Gisbrecht's* express rejection of a lodestar-type of fee calculation, Counsel also repeatedly attempts to use the lodestar calculation and its related principles to justify his fee request and his effective hourly rate. [*Id*. at 8:11-9:19; 10:20; 12:10-23; 20:3-9.]

The Court finds Counsel's foregoing arguments lack merit, and that a reduction of this fee request is warranted, for the following reasons.

First, because *Gisbrecht* and *Black* have collectively made it clear that it is reversible error for district courts to use a lodestar-type of calculation in its reasonableness determination, the Court rejects Counsel's attempt to justify his fee request on this basis.

Second, the Court rejects Counsel's insistence on using the surveys as a basis for comparing whether the effective hourly rate of his fee request is reasonable because these surveys are irrelevant. The surveys are irrelevant because, in addition to being dated, *Gisbrecht* expressly states that it is the moving "lawyer's normal hourly billing charge for noncontingent-fee cases" that is a relevant aid to the Court's reasonableness determination. *Gisbrecht*, *id*. at 808; *see also Ellick v. Barnhart*, 445 F.Supp.2d 1166, 1172 n. 18 (C.D. Cal. 2006) (in considering § 406(b) fee request made by one of counsel's associates, the Court found the survey was irrelevant because, in light of *Gisbrecht*, "rates other than the normal hourly rates of counsel's office do not materially aid the Court's assessment of reasonableness.").[8] Further, as Counsel explains in his Motion, the hourly rates in the surveys represent "hourly rates actually charged in the community by willing buyers and sellers of lawyers' stock in trade, i.e., time and advice." [Motion at 7:21-22.] Yet, Counsel has failed to show that his law firms participated in these surveys or that any of the participating law firms had practices similar to his own. In this regard, the Court finds the surveys are also irrelevant because Counsel has failed to show that he actually had existing or prospective clients that were willing to pay him hourly rates that were the same or

---

[8] This Court acknowledges that it has previously considered the hourly rates set forth in the survey in connection with prior § 406(b) fee requests. However, after further consideration, the Court finds the survey is irrelevant for the reasons stated in this Order.

comparable to the rates in the surveys, and that he actually gave up this billable business to take the plaintiff's case on a contingency basis.

Third, the Court finds the effectively hourly rate for the amount of fees requested by Counsel are unreasonable and that a reduction is necessary. In this regard, the Court finds counsel's aforementioned computation of the effective hourly rates is wrong. The total amount attorney and paralegal time spent on this case was 23.25 hours (19.75 + 3.5). Consequently, roughly 85% (19.75/23.25) of the total time consists of counsel's time while roughly 15% (3.5/23.25) is for work performed by his paralegal. Counsel seeks $17,368.25 of § 406(b) fees, that is, $14,763.01 for his time (.85 x $17,368.25) and $2,605.24 for his paralegal's time (.15 x $17,368.25). Therefore, the true effective hourly rates are roughly $747.50 for Counsel's time ($14,763.01/19.75)  and $744.35 for his paralegal ($2,605.25/3.5). Applying the Court's own experience in making "reasonableness determinations in a wide variety of contexts," *Gisbrecht*, *id.* at 808, the Court finds the true effective hourly rate for counsel's time is considerably higher than the current hourly rates for partners in many large and mid-sized law firms, let alone the rates that small firms charged back in 2003 (when the bulk of services were rendered in this case).  The true effective hourly rate of counsel's paralegal is a record for a law firm of any size. Regardless, the true effective hourly rates establish a reduction is justified to prevent a windfall.

The *Gisbrecht* majority added that, in conducting the reasonableness determination, district courts "...may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.* at 808. As to the latter factor, the *Gisbrecht* majority recognized that reduction may be warranted where the effective hourly rate for the § 406(b) fee request was signficantly higher than the requesting lawyer's normal hourly rate for billable work.

Counsel has provided a record of the time spent by him and his paralegal in working

Page 10

on this case. [Motion, Kalagian Decl., ¶5, Ex.4.] The only entry the Court questions is the 1.2 hours that counsel declares he spent on November 29, 2004 to review the Court's memorandum opinion and judgment remanding this case. The Court finds this amount of time is excessive because it should not have taken an experienced attorney more than .2 hours of time (12 minutes) to read and digest the entire contents of an eleven page order and one-page judgment. The Court finds a 1.0 hour reduction is warranted.

Although Counsel provided a record of the time spent, he did not disclose the normal hourly billing rates for non-contingent work that his firm charged its clients during the same period of time that he rendered services to the plaintiff in this case. Instead, as mentioned above, Counsel declared that "the vast majority of the work done by the lawyers in this office is on a contingency basis," and that he "utilizes" aforementioned surveys "to assess the value of his services." [Motion; Kalagian Decl. ¶ 6.]

Based upon Counsel's failure to provide a statement of his normal hourly rates for billable matters, the Court issued an order directing him to provide this and other information in a supplemental declaration. [5/14/07 Order (docket item #25.)] The 5/14/07 Order explained that, in light of *Gisbrecht's* focus upon the requesting lawyer's normal hourly billing rates, the surveys were irrelevant. [*Id.* at 2.] The Court also pointed out that, in the *Ellick* case, one of Counsel's associates supported her petition for EAJA fees with a June 2004 declaration in which she expressly represented that her "normal billing rate for matters taken on an hourly basis is $220.00 per hour, and $95.45 for my paralegal." *Ellick*, 445 F.Supp.2d at 1172. [5/14/07 Order at 2.] The 5/14/07 Order also mentioned that *Ellick* was not cited or discussed in the pending Motion or reply even though *Ellick* was published eight days before the pending Motion was filed. In any event, and pursuant to *Gisbrecht*, the Court's 5/14/07 Order expressly directed Counsel to file and serve a supplemental declaration that contained:

> a statement of the normal hourly rates in non-contingency cases that his law
> firm charged clients for legal services provided by him and his paralegal for
> each year in which legal services were rendered to plaintiff in this case (2002-

Page 11

1  2005).  In order to verify the normal hourly rates are accurate and reliable,
2  Mr. Kalagian's supplemental declaration must provide a good-faith
3  approximation of the number of non-contingent cases in which the normal
4  hourly rates were charged and a general description of the nature of such
5  cases (e.g., family law, transactional, etc.).

[5/14/07 Order at 3.]

On May 14, 2007, Counsel filed a Supplemental Declaration (previously cited above, at page 6, lines 11-12) but it did not contain the requested information.   Instead, his Supplemental Declaration states, in relevant part, that: (1) "[w]e the Law Offices of Lawrence D. Rohlfing and Rohfling & Kalagian, LLP, have no normal hourly billing ate[;]" (2) "[a]pproximately 95% of our practice is Social Security disability; (3) that "we have consistently used the 2000 and 2001 small office surveys to assess the value of the services that we render" and, based upon these surveys, "as of January 1, 2000, partners are worth between $250 and $336 and associates are worth between $171 and $250 per hour;" and (4) that adjustments for inflation "hypothetically increase the hourly rate compensation to $350.25 to $470.74 for partners and to $239.57 to $350.25 for associates."  [Supplemental Declaration, ¶¶ 2-4.]

The Court finds the foregoing supplemental statements are non-responsive to the 5/14/07 Order and disturbingly evasive, and misleading. The statements also manifest Counsel's continuing failure to appreciate *Gisbrecht's* focus on the moving lawyer's normal hourly billing rate as an aid in the Court's reasonableness determination.

Specifically, as to Counsel's supplemental statement that none of the attorneys in his firm have normal hourly billing rates, the Court finds it is a non-responsive, equivocal attempt by Counsel to suggest that he never had normal hourly rates during the periods he rendered services to the plaintiff. Nor does he explain or attempt to reconcile this supplemental statement with his associate's aforementioned *June 2004* declaration filed in *Ellick* in which she expressly represented that "[her] normal billing rate for matters taken on an hourly basis is $220.00 per hour, and $95.45 for my paralegal." *Ellick*, 445

F.Supp.2d at 1172.

However, the most troubling aspect of Counsel's supplemental statement is that it falsely conveys the impression that he and the other attorneys in his firm did not have a normal hourly billing rate during the relevant period. Specifically, the Court takes judicial notice that, on October 18, 2002, and August 21, 2005, respectively, Counsel filed petitions for EAJA fees in two prior social security cases in which he expressly represented to this Court that, "**[t]he attorneys in [C]ounsel's firm bill for their time at $200.00 to $250.00 per hour for matters taken on a time-expended basis.**" [*Jackson v. Barnhart*, case no. CV 02-880 (AN) (C.D. Cal.), 10/18/02 EAJA fee petition, ¶ 8 (emphasis added); *Fiorito v. Barnhart*, case no. CV 02-7651 (AN) (C.D. Cal.), 8/21/03 EAJA fee petition, ¶ 8 (emphasis added).] Under the circumstances, the Court finds Counsel willfully refused to disclose his prior normal hourly rates because doing so would undermine his effort to utilize the higher rates reflected in the surveys and coterminously undermine his argument that his fee request would not amount to a windfall. Worse, Counsel recognized that the disclosure of his prior hourly rates would establish that, as late as August of 2003 -- roughly around the time he rendered most of his services to the plaintiff -- he and the lawyers in his firm were only capable of attracting billable work in noncontingent-fee cases at hourly rates well below the 2000 rates reflected in the surveys.

In any event, based upon the fee petitions that Counsel filed in the *Jackson* and *Fiorito* cases, the Court finds his normal hourly rate for the relevant period did not exceed $250.00. Since counsel is a name partner rather than an associate, the Court assumes, without finding, that his normal hourly rate was $250.00. As discussed above, Counsel requests $17,368.25 in §406(b) fees or an award that would provide him effective hourly rates of $747.50 for himself and $744.35 for his paralegal, respectively. Consequently, the Court finds Counsel's fee request would compel his client to pay him an effective hourly rate that is nearly three times Counsel's relevant normal hourly rate ($747.50/$250.00 = 2.99). Further, based upon the June 2004 declaration that his associate filed in *Ellick*, the Court finds the normal hourly rate for Counsel's paralegal was at or below $95.45 during

Page 13

the relevant period. Therefore, Counsel is effectively requesting § 406(b) fees that would require his client to pay him an hourly rate that is approximately 7.8 or nearly eight times the normal rate charged for his paralegal's services ($744.35/95.45 = 7.79). The Court finds granting the Motion in the full amount of the requested § 406(b) fees would result in a substantial windfall to the detriment of the plaintiff. While the character of the substantive work that counsel performed does not warrant any reduction for the reasons discussed above, regrettably, the Court finds Counsel's wilful failure to provide the Court-ordered *Gisbrecht* information, and the attendant misleading nature of the aforementioned statements in his Supplemental Declaration, reflects poorly upon another important aspect bearing upon the character of Counsel's representation this case -- his credibility and integrity -- and that his action warrants a substantial reduction as a reminder not to engage in similar antics in the future.

### 6. The Amount of Reasonable § 406(b) Fees

In *Ellick*, the court correctly observed that *Gisbrecht* does not provide any uniform rule of law or guidance in quantifying the amount of reasonable fees under § 406(b), particularly where the benefits are comparatively large to the amount of time actually spent by counsel. *Ellick*, *id*. at 1173-74. "After surveying the case law, and after considering the nature of the contingency risk," the court in *Ellick* concluded a downward adjustment was warranted under the circumstances, and the court ultimately awarded §406(b) fees that were 2.5 times the normal hourly rates of counsel and her paralegal. *Id*. In doing so, "[t]he Court acknowledged the regrettable imprecision of its analysis." *Id*. at 1174.

This Court shares some of the same concerns expressed in *Ellick*. And while the court in *Ellick* awarded §406(b) fees in an amount of 2.5 times the normal hourly rates of counsel and her paralegal, the Court finds that is not warranted here because *Gisbrecht* requires a case-by-case determination of whether the Claimant's counsel can satisfy his or her burden of showing the requested §406(b) fees are reasonable and should not be reduced due to a windfall. *Id.* at 808.

After considering *Gisbrecht* and *Black*, the Court finds granting Counsel's request

1  for $17,368.25 in fees under §406(b) would require the plaintiff to pay Counsel an effective
2  hourly rate that is nearly three times Counsel's normal hourly rate for the relevant period,
3  and enhance his paralegal's effective hourly rate by roughly eight times. Therefore, a
4  downward adjustment is necessary.

5  Based upon the foregoing considerations, the Court finds a gross fee of $7,530.00
6  under § 406(b) is reasonable for the representation of the plaintiff in this case. This fee is
7  1.5 times the highest presumed normal hourly rates of Counsel and his paralegal for the
8  relevant period (a *de facto* rate of $375 for counsel based upon 18.75 hours of work and
9  $142.50 for his paralegal based upon 3.5 hours of work) and more than compensates
10 Counsel for his skills in handling a straightforward case with relatively no contingent risk
11 and, is frankly, more than he deserves given his lack of cooperation and candor in
12 providing relevant information requested by the Court.

### III. CONCLUSION

15 Based upon the foregoing considerations, the Motion is granted in part; gross fees
16 under §406(b) in the amount of $7,530.00, to be paid out of the sums withheld by the
17 Commissioner from the plaintiff's benefits. Counsel shall reimburse the plaintiff the
18 $3,000.00 previously paid by the Government under the EAJA so that Counsel's net fee
19 is $4,530.00.

21 IT IS SO ORDERED.

24 DATED: July 27, 2007            / s /   ARTHUR NAKAZATO
                                        ARTHUR NAKAZATO
25                                 UNITED STATES MAGISTRATE JUDGE